*Tagged opinion*
*Do not publish*



**ORDERED in the Southern District of Florida on May 3, 2023.**

**Laurel M. Isicoff**
**Chief United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

In re:

EDGEWATER CONSTRUCTION
GROUP, INC.,

     Debtor.                      /

EDGEWATER CONSTRUCTION
GROUP, INC.,

v.

JOHN MORIARTY & ASSOCIATES
OF FLORIDA, INC. a Massachusetts
corporation, PPF AMLI 45
WYNWOOD, LLC, a Delaware
limited liability company, PMG-

Case No.: 23-12217-LMI

Chapter 11
Subchapter V

Adv. Case No.: 23-01092-LMI

GREYBROOK WYNWOOD TRUSTEE, LLC, a Delaware limited liability company, CG SUMMER INVESTMENTS, LP, a Delaware limited partnership, and GGT FLAGLER LIMITED PARTNERSHIP, a Delaware limited partnership.

   Defendants.     /

**ORDER DENYING THE PLAINTIFF'S EXPEDITED MOTION FOR TURNOVER AND GRANTING MOTION FOR STAY RELIEF**

This matter came before the Court for evidentiary hearing on April 20, 2023 (the "Hearing"), in connection with *Plaintiff's Expedited Motion for Turnover* (Adv. Pro. ECF #5)[1] (the "Turnover Motion") filed by Edgewater Construction Group, Inc. ("Edgewater" or "Plaintiff" or "Debtor") and the *Amended Motion to Compel Assumption or Rejection of Subcontracts, or Alternatively, for Relief from the Automatic Stay to Terminate the Subcontracts* filed by John Moriarty & Associates of Florida ("JMAF") (ECF #64) (the "Motion for Relief"). The Court has considered the Turnover Motion, the evidence presented, including a review of all exhibits including designated depositions, as well as the arguments submitted by the parties both before and after the Hearing. As briefly outlined below, the Court finds that the Turnover Motion must be denied at this juncture, and that the Motion for Relief should be granted.

At the request of the parties, these two motions were set for an evidentiary hearing on an expedited basis. The Court wants to commend, again, counsel for

---

[1] All references to "Adv. Pro. ECF #" refer to docket entry numbers in the above-styled adversary proceeding. All references to "ECF #" refer to docket entry numbers in the main case.

2

their incredible efforts to streamline the evidence for the Hearing as much as possible.  The Court also recognizes that the closing submissions were, to meet the parties accelerated timeline request, produced on an expedited basis without the benefit of transcripts. Finally, the Court has done its best to review all the submissions. Due to the accelerated timelines this opinion will be more abbreviated than is the Court's practice, but hopefully enough detail is provided for the parties to understand the Court's ruling.  The Court is not including basic preliminary facts since this Order is being entered for the benefit of the parties in lieu of an oral ruling to avoid delay.

Because the Plaintiff has framed the issues such that a loss by Plaintiff on the Turnover Motion will, in essence, moot the Plaintiff's ability to overcome the Motion for Relief, the Court begins with the Turnover Motion.  The Turnover Motion seeks (1) turnover of all Debtor's Personal Property[2] in JMAF's possession pursuant to 11 U.S.C. §542(a) and (2) turnover and payment of the Draw Requests[3] by JMAF pursuant to 11 U.S.C. §542(b). "Turnover under 11 U.S.C. § 542 is a remedy available to debtors to obtain what is acknowledged to be property of the bankruptcy estate." *In re Asousa P'ship*, 264 B.R. 376, 384 (Bankr. E.D. Pa. 2001) (internal citations omitted).  However,

> Turnover proceedings are not to be used to liquidate disputed contract claims. *In re Chick Smith Ford, Inc.,* 46 B.R. 515, 518 (Bankr. M.D. Fla.1985). Clearly, Congress envisioned the turnover provision of § 542 of the Code, 11 U.S.C. § 542 (1988), to apply to

---

[2] Defined in the Turnover Motion as "tools, equipment and materials that are property of the Debtor, including without limitation, scaffolding, hand tools, dollies, radios and construction materials."
[3] As defined in the Turnover Motion.

3

> tangible property and money due to the debtor without dispute which are fully matured and payable on demand. *See United States v. Whiting Pools, Inc.,* 462 U.S. 198, 202-03, 103 S. Ct. 2309, 2312-13, 76 L.Ed.2d 515 (1983); *In re Chick Smith Ford,* 46 B.R. at 518. Congress intended to ease reorganization by allowing the debtor to obtain funds immediately necessary for survival-not all funds, only those not in dispute. *In re Chick Smith Ford,* 46 B.R. at 518; *see, e.g., In re Archer,* 34 B.R. 28 (Bankr. N.D. Tex. 1983) (fully liquidated and undisputed bank deposits to be offset against outstanding loan); *see also In re Welch,* 29 B.R. 819 (Bankr. M.D. Tenn. 1982).

*In re Charter Co.,* 913 F.2d 1575, 1579 (11th Cir. 1990).

With respect to the Plaintiff's request for turnover of the Personal Property, based on the testimony at the Hearing, and omission of any mention of the tools in the Plaintiff's closing submissions, the Court assumes this claim has been resolved, at least for purposes of the Turnover Motion. If there are any remaining issues, the Court will address those during the balance of the litigation with respect to this adversary proceeding.

With respect to the Plaintiff's request for turnover of the Draw Requests, Plaintiff argues that there really is no dispute about the money for which it is seeking turnover. But that is not the case. While it is true that it appears that payments were withheld by JMAF for reasons not specified in the applicable subcontracts, other exhibits show that repeatedly, from November 2022 on, with respect to a variety of the four projects at issue, JMAF advised Edgewater that people weren't showing up, that there were delays being caused, and that if not resolved, JMAF reserved the right to deduct payments from draws and "reserved the right to recover damages". (*See, e.g.,* Ex. 130). And, of course, each

4

subcontract gave JMAF the right to setoff "[i]n the event there are other Subcontract Agreements between Contractor and Subcontractor, on this or any other job, Contractor shall have the right to retain out of any payment due or to become due under this or any other Subcontract Agreement an amount sufficient to satisfy any obligation of Subcontractor under any and all subcontracts."

There is also the issue regarding the "approved for payment" stamps. Based on highlighted deposition testimony, it appears that the "approved for payment" stamps were not the "final step" before payment would necessarily be made.

Thus, there are disputed issues regarding whether it was proper for JMAF to withhold payment, even though not for what Edgewater argues are solely the stated reasons, (insurance, surety consent, daily or weekly meetings) that are not in the subcontracts; whether Edgewater deliberately hid its use of sub-subcontractors and what, if any bearing that has on any of this[4]; and whether and to what extent Edgewater leaving the job sites without written notice was or was not excused in light of the events leading up to Edgewater's exodus from the projects. In sum, this is clearly NOT a case of an undisputed property right, but rather, a contract dispute with many moving parts. While the parties have done an incredible job in the short time frame they, appropriately, deemed necessary, this is clearly a contract dispute that requires a more fulsome presentation (and

---

[4] The OCIP issue is not persuasive since JMAF never gave Edgewater the three-day notice to cure provided by the subcontracts, which, according to Mr. Vazquez, could have been easily cured.

5

perhaps a more developed record) to determine the various breaches and the consequent damages owed to whom for those breaches.

While this ruling is dispositive of the Motion for Relief, according to the Debtor, the Court wants to briefly address this issue. The movant, here JMAF, has the burden to show that it is appropriate to accelerate the time for assumption or rejection of a contract. John Leete testified that the projects (other than La Clara where someone has been brought in to finish the work) are at a virtual standstill in certain stages because drywall or stucco, or both, need to be completed for other trades to come in and work. Mr. Leete also testified that in one project the kitchen installers have moved on to other projects because they have built out as much as they can without the drywall being complete. Edgewater did not offer any arguments other than it needs the money subject of the Turnover Motion, to complete the projects. However, in adding up the claims of lien (regardless of whether they are $10,000 off or $50,000 off the lien claims still total close to, if not more than, $400,000) as well as the cost to complete, Edgewater did not provide any evidence how it would be able to complete the projects if given the opportunity to do so. Thus, were the Court called upon to exercise its discretion regarding the Motion for Relief's request to order the Debtor to make its decision to assume or reject within a specified period of time, *see In re Cabi SMA Tower 1, LLP*, 2011 WL 1321366 at *2 (Bankr. S.D. Fla. 2011), the Court would be persuaded that the relief was appropriate in this instance.

When initially filed by JMAF, the Motion for Relief sought a deadline by which Edgewater must assume or reject the subcontracts, and alternatively,

requested modification of the automatic stay to permit JMAF to exercise its right of termination under the subcontracts. However, in JMAF's closing argument (Adv. Pro. ECF #65), JMAF now relies solely on its alternative relief and "requests that this Court grant immediate modification of the automatic stay for JMAF to exercise its right of termination and allow relief from the automatic stay to take effect immediately under Bankruptcy Rule 4001(a)(3) upon the entry of an order." Because the Court finds that the La Clara subcontracts were not terminated pre-petition, the relief granted includes the La Clara subcontracts.

In sum, it is ORDERED as follows:

1. The Motion for Turnover is DENIED[5].

2. The Motion for Relief is GRANTED. The automatic stay is lifted to allow JMAF to exercise its rights under all of the subcontracts, including its rights of termination under Article Twelve of the subcontracts. Relief from the automatic stay shall take effect immediately under Bankruptcy Rule 4001(a)(3) upon the entry of this Order.

3. The Court will hold a status conference on the adversary proceeding at a date to be set by separate notice of hearing.[6]

###

Copies furnished to:
Jacqueline Calderin, Esq.
Patrick "Rick" M. Shelby, Esq.

---

[5] The Court has not made any final determinations regarding the remaining counts in the Complaint (Adv. Pro. ECF #2) other than the turnover of the draw requests.
[6] The Clerk of Court is directed to also docket this Order in the main case (Case No. 23-12217-LMI).

*Attorney Shelby is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF, and file a proof of such service within two (2) business days from entry of the Order.*